IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

**FRANCES G. POST**, individually
and on behalf of all others similarly situated,

      **Plaintiff**,

v.

**AMERISOURCEBERGEN CORPORATION**,
A Delaware corporation,
**US BIOSERVICES CORPORATION**, a Delaware
Corporation; **I.g.G. OF AMERICA, INC.**,
A Maryland Corporation, and
**IHS ACQUISITION XXX, INC.**, A Deleware
Corporation

      **Defendants.**

Civil Action No. 1:19-cv-73
Judge: Thomas S. Kleeh

## COMPLAINT

Come now the Plaintiff and Putative Class Representative, Frances G. Post, individually and on behalf of all others similarly situated, and for her complaint against Defendants, states as follows:

### Introduction

1. Plaintiff Francis Post brings this suit on behalf of herself and all persons who were prescribed immunoglobulin (IVIG) by Felix Brizuela, D.O. between April 3, 2012 and March 19, 2015 ("Class Period") and were directed to Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. for purchase of IVIG.

2. Throughout the Class Period, Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. made payments

to Felix Brizuela, D.O. to direct Francis Post, and the Putative Class members she seeks to represent in this litigation, to purchase IVIG from Defendants.

3. Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. made these payments to Felix Brizuela, DO for the sole purpose of increasing sales of IVIG to increase corporate profits. Defendants made these payments in violation of the law, in violation of their written policies, in violation of ethical standards, and without regard for the health, safety and well being of Francis Post and all the members of the Putative Class she seeks to represent. As a result of this wrongful conduct Francis Post, and all the Putative Class members she seeks to represent have been physically and financially injured, and Defendants have all been unjustly enriched.

## The Parties

4. Plaintiff Frances G. Post is a citizen and resident of Morgantown, Monongalia County, West Virginia. Frances G. Post and the Putative Class members are individuals who were directed by Felix Brizuela, D.O. to purchase IVIG from Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. Francis Post purchased IVIG from Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. in Morgantown, Monongalia County, West Virginia.

5. Defendant AmerisourceBergen Corporation is a Delaware corporation with its principal place of business in Chesterbrook, Pennsylvania. Defendant AmerisourceBergen Corporation distributes approximately 20% of all the pharmaceuticals sold and distributed throughout the United States. At all times during the Class Period, it routinely conducted

business in Monongalia County, West Virginia, among many other West Virginia counties.

6. Defendant US Bioservices Corporation is a Delaware corporation with its principal place of business in Plano, Texas. At all times during the Class Period, it routinely conducted business in Monongalia County, West Virginia, among many other West Virginia counties.

7. Defendant I.g.G. of America, Inc. is a Maryland corporation and is a business unit of US Bioservices Corporation with its principal place of business in Plano, Texas. At all times during the Class Period, it routinely conducted business in Monongalia County, West Virginia, among many other West Virginia counties.

8. Defendant IHS Acquistion XXX, Inc. is a Delaware corporation with its principal place of business in Chesterbrook, Pennsylvania. At all times during the class period, it routinely conducted business in Monongalia County, West Virginia, among many other West Virginia counties.

## Jurisdiction and Venue

9. This Court has jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs and members of the class are residents of states different from one or more defendants.

10. This Court also has jurisdiction pursuant to 28 U.S.C. §1332(a) as numerous members of the class are citizens of states different from one or more Defendants.

11. Venue is proper pursuant to 28 U.S.C. §1391(a) through (c) because Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS

Acquisition XXX, Inc. each employed an Executive Account Manager and Director of Sales to target and sell IVIG in Monongalia, West Virginia and to pay Felix Brizuela, DO for clients in this Judicial District.

## Background Facts

12. I.g.G of America, Inc. and IHS Acquisition XXX, Inc. are business units of US Bioservices Corporation. US Bioservices Corporation is a business unit of AmerisourceBergen Corporation and the companies represent themselves to the public as an AmerisourceBergen Specialty Group.

13. Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc., at all relevant times during the Class Period, held themselves out to the public as AmerisourceBergen Specialty Group. There is actual and/or apparent agency among the Defendants with respect to conduct, marketing, and sales of Defendants' IVIG and the resulting legal, warranty and contractual responsibilities of each of the Defendants on behalf of the other.

14. Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. employed an Executive Account Manager to sell immunoglobulin (IVIG), in Monongalia County, West Virginia. Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. employed a Director of Sales to oversee the sales and services of IVIG in Monongalia County, West Virginia.

15. Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. are related companies within the same

pharmaceutical marketing and sales group. During the Class Period, Defendants made payments to Felix Brizuela, D.O. to induce him to misdiagnose Francis Post and the other Putative Class members she seeks to represent for the purpose of increasing sales of Defendants' IVIG, which in turn wrongfully increased the profits of Defendants. The wrongful acts by Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. in making payments to Felix Brizuela, D.O. occurred through the actions of, and ratifications made, by a common nucleus of agents, employees, managers and representatives of Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. The illegal, wrongful and concerted conduct emanated from, was substantially committed by and/or was ratified by Defendants as part of their business in Monongalia County, West Virginia.

16. At all times relevant to the Class Period, Felix Brizuela, D.O. and Felix Brizuela, D.O., PLLC operated a Neurology office located at 1271 Suncrest Towne Centre, Morgantown, West Virginia.

17. Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. sell immunoglobin (IVIG) throughout the United States. IVIG is an intravenously administered blood product prepared by pooling immunoglobulins from the plasma of thousands of human donors.

18. Defendant I.g.G. of America employed an Executive Account Manager and Director of Sales to target Felix Brizuela, DO, among other physicians, to achieve an increase in sales of IVIG and to increase the profits of Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc.

19. Defendants AmerisourceBergen and US Bioservices controlled the day to day operations of I.g.G. of America and IHS Acquisition by establishing policies for compensation and bonus commissions for sales executives, controlling the human resources department, controlling compensation of I.g.G. sales employees and controlling payroll of I.g.G,, among other daily corporate business.

20. Defendants greatly incentivized the aggressive sales of IVIG, especially to new purchasers, because Defendants knew: (1) Once a person is prescribed IVIG, in many instances the person will take IVIG infusions for the remainder of his/her natural life; (2) IVIG is very expensive for the purchaser and very lucrative for Defendants; and (3) Defendants devised an internal practice which enabled Defendants to secretly under-report and under-pay bonus commissions on IVIG sales for the purpose of bolstering corporate profits.

21. Defendants charged high rates for their IVIG product and raised prices quickly as the customer continued purchasing IVIG. For example, Francis Post received infusions every two weeks. Defendants initially charged $8,758.29 for each infusion, then raised the charge to $9,126.28 for each infusion, and then raised the cost to $10,450.44 for each infusion over a period of approximately 12 months.

22. Defendants so aggressively incentivized bonus commissions to its sales executives to book IVIG transactions that some sales executives earned an IVIG quarterly bonus in excess of $900,000.00. Sales executives received a higher bonus commission percentage for the first six months of every new booked IVIG transaction, with a continued lower bonus commission percentage for continued IVIG sales thereafter to that purchaser.

23. On April 3, 2012 Defendants began making payments to Felix Brizuela, DO that

were unlawful, wrongful, violated Defendants' written policies, violated ethical standards, and placed the health, safety, and wellbeing of Francis Post and all Putative Class members she seeks to represent at risk.

24. The approximately quarterly payments made by Defendants to Felix Brizuela, D.O. continued until March 19, 2015.

25. Felix Brizuela DO performed no services for Defendants to earn the payments made to him other than increasing the number of new book IVIG transactions for Defendants.

26. While Defendants paid Felix Brizuela, DO to obtain more new book IVIG transactions for Defendants, Felix Brizuela, D.O. became one of the highest volume IVIG prescribing practitioners in the United States as measured by CMS data.

27. During the approximate 26-month period Defendants made payments to obtain more new book IVIG transactions, Defendants obtained approximately 65 new book IVIG transaction accounts through Felix Brizuela, DO.

28. Francis Post, and all Putative Class members she seeks to represent, did not have CIPD, the medical condition diagnosed to trigger the sale of IVIG.

29. Defendants knew Felix Brizuela, D.O. was making CIDP diagnoses to trigger the sale of IVIG at an incident rate exponentially higher than any rate published in peer review studies, higher than any other prescribers, and that Felix Brizuela, D.O.'s documentation in the possession of Defendants did not support new book IVIG transactions.

30. Defendants knew the health, safety and wellbeing of Francis Post, and all Putative Class members were at risk because Defendants were making wrongful payments to obtain new book IVIG transactions through Felix Brizuela, D.O.

31. IVIG must be infused slowly over a course of hours. Infusion requires surgical PICC line placement and maintenance for infusion or IV administration for each infusion. Both methods of infusion are associated with risk of infection, injury, disease and death. Side effect rates for IVIG are high and include extreme fatigue, malaise, fever, nausea, vomiting, all described as flu like symptoms, headaches, blood pressure changes, and tachycardia. The infusions prevent people from carrying out functions of daily living and work on the days of their infusion, and for some, days thereafter. IVIG is associated with acute renal failure, thromboembolic events, aseptic meningitis, neutropenia, and skin reactions, among other risks. All IVIG patients require administration and monitoring associated with the infusions. In short, it is not a harmless product administered in a harmless manor.

32. Defendants admit Felix Brizuela, DO performed no services on behalf of Defendants to legitimately earn ten payments made to Felix Brizuela, D.O. by and on behalf of Defendants.

33. Defendants admit the payments made to Felix Brizuela, D.O. violate their own policies.

34. Defendants' policies against the type of payments made to Felix Brizuela, D.O. were put in place, in part, to protect the health, safety, and wellbeing of IVIG purchasers, including Francis Post and the other Putative Class members.

35. Throughout the Class Period, Defendants made the wrongful payments and violated their own policies to increase new book IVIG transactions, increase paid and underpaid sales commissions, and increase corporate profits.

36. Defendants have never disclosed or reported their wrongful conduct to Francis

Post and the Putative Class members she seeks to represent.

37. Throughout the Class Period and to the present, Defendants have engaged in a course of conduct designed to conceal and/or avoid their legal and equitable obligations to inform and reimburse Francis Post and the Putative Class members she seeks to represent for their wrongful conduct.

38. Defendants' wrongful acts have been uniformly and systematically carried out in a concerted manner by and for each Defendant and is representative of Defendants' conduct during the Class Period that affected Francis Post and all persons in the defined Putative Class.

39. Francis Post and all class members were not aware of Defendants' wrongful conduct and could not reasonably have known of the wrongful conduct because of Defendants' acts of concealment. Francis Post became aware of the wrongful payments in April 2019.

40. Plaintiff brings this action individually and further seeks certification on behalf of herself and on behalf of the Putative Class members she seeks to represent as a Federal Rule of Civil Procedure Rule 23(b)(3) class defined as follows:

> All persons who were prescribed immunoglobulin (IVIG) by Felix Brizuela, D.O. between April 3, 2012 and March 19, 2015 and were directed to Defendants AmerisourceBergen Corporation, US Bioservices Corporation, Ig.G. of America, Inc., and IHS Acquisition XXX, Inc. for purchase of IVIG.

Excluded from this class are (1) all present and former directors, officers, and management employees of Defendants, (2) any persons who filed a lawsuit against the defendants named in this lawsuit involving any of the claims asserted herein, (3) employees of Tiano O'Dell, PLLC, Plaintiff's Class Counsel in the case, any judge assigned to this case and their staff, Defendants' counsel of record, and their immediate families, and (4) all persons who

make a timely and proper election to be excluded from the class.

  41. This action is properly brought as a class action for the following reasons:

   a. The class is numerous and includes a significant number of patients who are located in diverse geographic regions including West Virginia, Pennsylvania, and potentially Ohio. Attempting to join and name each class member as a co-Plaintiff would be unreasonable and impracticable.

   b. There are questions of law and fact common to the members of the Class that predominate over any individual questions affecting only individual class members. The theories of liability and questions of whether Defendants committed wrongful conduct in paying Felix Brizuela, DO to direct the class members to purchase IVIG from Defendants during the 26 month period of payments; whether Defendants engaged in dishonest, deceptive, negligent and intentional conduct to increase corporate profits to the detriment and harm of Plaintiff and the Putative Class; whether Defendants actions were willful, wanton and reckless; whether Defendants were required to inform Class Members that Felix Brizuela, DO had been paid to direct them to purchase IVIG from Defendants; whether the Putative Class members are thus entitled to restitution, disgorgement, equitable relief and damages for injuries, are among those questions common to the class as a whole, and do not turn on any particular aspect of any individual's Class member's situation. Defendants acted in a manner that affected all of them similarly.

   c. The claims asserted by Plaintiff are typical of the claims of the members

of the class.

d.     The Plaintiff will fairly and adequately protect the interests of the members of the class. The interests of the class are coincident with, and not antagonistic to, those of the Plaintiff. Furthermore, Plaintiff is represented by experienced class action counsel with adequate resources to prosecute this class action.

e.     This class action is an appropriate method of the fair and efficient adjudication of this controversy because:

  i.     There is no special interest by class members in individually controlling the prosecution of separate actions;

  ii.    When Defendants' liability has been adjudicated, claims of all class members can be administered efficiently under the direction of/or as determine by the Court;

  iii.   This action will promote an orderly and expeditious administration and adjudication of the class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be insured;

  iv.    Without a class action, Plaintiff and the class will suffer damages and Defendants' violations of law will proceed without remedy while Defendants reap and retain the substantial proceeds of its misleading and wrongful conduct; and

  v.     There will be no insurmountable difficulty in the management of this lawsuit as a class action.

    vi.    The conduct of this action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

    vii.    Certification of the class with respect to particular common factual and legal issues concerning liability, comparative fault, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Federal Rule of Civil Procedure 23(c)(4).

    viii.    The particular common issues of liability, and the quantum of punitive damages or ratio of punitive damages to actual harm, are common to all Class Members.

42. The liability arising from Defendants' conduct may be tried on a class wide basis, as the trial will focus upon only common questions applicable to the entire members of the class. Those common questions arise from Defendants' wrongful, deceptive and dishonest conduct in paying Felix Brizuela, DO to direct Plaintiff and the class members to purchase Defendants' IVIG, and subsequent conduct in covering up and failing to disclose the resulting liability. Common liability issues exist between Defendants and all the members of the Putative Class. Thus, a trial of the Plaintiff's claims will decide liability issues for all the members of the defined Putative Class.

## CAUSES OF ACTION

### COUNT I:   NEGLIGENCE

43. Plaintiff re-alleges and incorporates by reference the previous paragraphs as

though separately set forth herein.

44. Defendants knew, or in the exercise of reasonable care, should have known that paying Felix Brizuela, DO to increase sales of IVIG would injure the health, safety and wellbeing of Francis Post, and all Putative Class members she seeks to represent, and would cause them physical and financial harm, injuries and damages.

45. Defendants owed a non-delegable duty to Francis Post and all Putative Class members she seeks to represent to conduct IVIG business in an honest, legal, ethical, non-deceptive and safe manner without injuring Francis Post, and all the Putative Class members she seeks to represent.

46. There is no social value to Defendants' challenged behavior. In fact, Defendants' entire conduct, behavior, actions, misrepresentations, schemes, conspiracies, and omissions are against the law.

47. On the other hand, there is immense social value to the interests threatened by Defendants' behavior, namely the health, safety, and welfare of Plaintiff and the Putative Class.

48. Defendants breached their duty to Francis Post, and all the Putative Class members she seeks to represent, by: (a) paying Felix Brizuela, DO to increase sales of Defendants' IVIG, and were therefore negligent; (b) failing to use reasonable care and were otherwise negligent in the marketing and sales of their product; (c) failing to disclose to Francis Post and Putative Class members the payments made to Felix Brizuel, DO at the time of sale or any time thereafter; (d) failing to recognize the number of CIPD diagnoses in the geographic location defied all epidemiologic reason.

49. Each Defendant sold IVIG in the supply chain knowing there was a substantial

likelihood the sales were improper due to the illegal payment scenario under which the sales were procured.

50. Defendants were also negligent or reckless in failing to guard against foreseeable conduct of corrupt sales people, corrupt managers, and others within the corporate structure.

51. The aforementioned negligent conduct of Defendants' directly and proximately caused damage to Plaintiff, Francis Post all the Class members she seeks to represent. The Plaintiff and the Class members request all damages allowable under law.

## COUNT II:   PERSONAL INJURY

52. Plaintiff re-alleges and incorporates by reference the previous paragraphs as though separately set forth herein.

53. Plaintiff Francis Post and all those similarly situated have by definition suffered personal injury related to the purchase of IVIG.

54. Plaintiff Francis Post and all those similarly situated have incurred medical costs related to the purchase of IVIG and loss of income.

55. Plaintiff Francis Post and all those similarly situated have suffered the aforementioned personal injury due to the conduct and omissions of Defendants.

56. The medical costs related to IVIG purchases are readily calculable.

57. Plaintiff Francis Post and all those similarly situated seek class-wide damages for the reimbursement of medical costs associated with IVIG.

58. Plaintiff Francis Post and all those similarly situated seek individual damages in a manner ascertainable by calculations, empirical method, or as otherwise determined by the Court to be reliable.

### COUNT III:  CIVIL CONSPIRACY

59. Plaintiff re-alleges and incorporates by reference the previous paragraphs as though separately set forth herein.

60. The conduct by and between Defendants as described herein occurred through two or more persons acting in concert to accomplish an unlawful purpose, by unlawful means and engaged in a repetitive pattern of behavior so as to constitute a civil conspiracy causing injury and damages to Francis Post and the class members.

61. No Defendant in this wrongful IVIG network would have succeeded in profiting so significantly from wrongful sales of IVIG without the concerted conduct of the other party, and none would have succeeded so significantly without engaging in the wrongful conduct as herein alleged.

62. As a direct and proximate result of the concerted actions between and among Defendants, and perhaps others, Plaintiff Francis Post and the class have suffered damages.

### COUNT IV:  FRAUDULENT CONCEALMENT

63. Plaintiff re-alleges and incorporates by reference the previous paragraphs as though separately set forth herein.

64. Defendants, individually and acting through their employees and agents, falsely and fraudulently concealed illegal payments to Felix Brizuela, DO to increase IVIG sales to increase corporate profits. Defendants did not disclose to Plaintiff or the class members that it was using deceptive, illegal practices to market and sell its IVIG product to obtain more IVIG sales.

65. Defendants knew Felix Brizuela, D.O. performed no services for Defendants to earn the illegal payments made to him other than increasing the number of new book IVIG transactions for Defendants. Defendants fraudulently concealed this information from Plaintiff and class members.

66. Francis Post and the class members were unaware of the illegal payment transactions and reasonably believed the referral and purchase of IVIG from Defendants to be necessary. Francis Post and the class members purchased IVIG and agreed to infusions in reliance on their reasonable belief that Defendants were honest, truthful and engaged in legal marketing and sales practices of IVIG.

67. Francis Post and the class members reasonably relied upon Defendants to be honest, truthful and to engage in legal marketing and sales practices.

68. Francis Post and class members would not have purchased IVIG from Defendants if the unlawful, concealed and dishonest payments by Defendants to Felix Brizuela, DO had been revealed at the initial purchase or any time thereafter when they continued to purchase IVIG from Defendants.

69. By engaging in the acts and practices alleged herein, Defendants omitted to state and disclose material facts they had a duty to disclose by virtue of Defendants' unique position of making illegal payments to increase the sales of IVIG and foreseeable harm and risk caused to Plaintiff and the class, including, but not limited to the following: (a) that the number of CIPD cases being diagnosed and number of orders for IVIG in the small geographic region defied all epidemiological reason; and (b) that illegal payments were being paid to Dr. Brizuela to increase the sales of IVIG for profit.

70. Defendants concealed the payments and other information described herein from Francis Post and the class members with the intent of deceiving them and obtaining money under false pretenses.

71. Defendants' fraudulent, wanton, malicious, willful, reckless conduct was a direct and proximate cause of injuries and damages to Francis Post and the class members she seeks to represent.

### COUNT V:   UNJUST ENRICHMENT/DISGORGEMENT

72. Plaintiff re-alleges and incorporates by reference the previous paragraphs as though separately set forth herein.

73. As a result of Defendants' wrongful, illegal conduct in paying Felix Brizuela, DO to increase IVIG sales, Defendants obtained sales from Francis Post and at least 65 class members. Defendants have wrongfully retained amounts from their illegal conduct which Defendants should have reimbursed to Francis Post and class members, which has unjustly enriched Defendants.

74. Defendants have been unjustly enriched by their own illegal conduct and have failed to make reimbursement. Francis Post and class members are entitled to restitution, disgorgement, reimbursement, and other appropriate equitable relief.

### COUNT VI:   PUNITIVE DAMAGES

75. Plaintiff re-alleges and incorporates by reference the previous paragraphs as though separately set forth herein.

76. Defendants' pattern and practice of aggressively inducing sales executives to increase sales of IVIG through illegal payments to Felix Brizuela, DO constitutes an

irresponsible, willful, wanton, and reckless attitude toward the safety and health of the public, including Francis Post and the class members. Such conduct was willful, deliberate, intentional, reckless, and/or malicious and was a proximate cause of injury and damages to Francis Post and class members.

77.     Defendants' concealment of the wrongful payments from Francis Post and class members was willful, deliberate, intentional, reckless, and/or malicious and was a proximate cause of injury and damages to Francis Post and class members.

78.     Defendants' failure to ever notify Francis Post and class members about the illegal payments was willful, deliberate, intentional, reckless, and/or malicious and was a proximate cause of injury and damages to Francis Post and class members.

79.     As a direct and proximate result of Defendants' willful, deliberate, intentional, reckless, and/or malicious conduct as described herein, Francis Post and the class members are entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Frances G. Post on behalf of herself and all those similarly situated prays that this Honorable Court grant the following relief from Defendants: compensatory damages, punitive damages, which said sums are in excess of $5,000,000, attorneys' fees and costs, pre-judgement interest, post-judgment interest as provided by law, suitable equitable relief, restitution, disgorgement by Defendants of all profits, and for such other relief as may be proper under the law.

**PLAINTIFF FURTHER DEMANDS A TRIAL BY JURY.**

                                        **FRANCES G. POST,**
                                        **By Counsel**

/s/ William M. Tiano
William M. Tiano (WV Bar #4308)
Tony L. O'Dell (WV Bar #5770)
Cheryl A. Fisher (WV Bar #6379)
TIANO O'DELL, PLLC
Post Office Box 11830
Charleston, WV 25339
(304) 720-6700
*Counsel for plaintiff*